STATE of North Dakota, Plaintiff
and Appellee,

v.

Larry J. KOEHMSTEDT, Defendant
and Appellant.

Cr. No. 719.

Supreme Court of North Dakota.

Oct. 6, 1980.

Cameron D. Sillers, State's Atty., Langdon, for plaintiff and appellee.

Garcia & Garcia, Devils Lake, for defendant and appellant; argued by Kirk Garcia, North Dakota.

SAND, Justice.

The defendant, Larry J. Koehmstedt, was convicted in county justice court of driving while under the influence of intoxicating beverages, a violation of § 39–08–01, North Dakota Century Code. This was his second conviction of DUI within eighteen months. He was fined $150.00, ordered to attend DUI school, and sentenced to three days' imprisonment in the county jail with one day credit for time served, and two days suspended for six months.

He appealed the conviction to the district court as permitted by § 33–12–34. NDCC, and Rule 37 of the North Dakota Rules of Criminal Procedure and received· a trial

anew in the district court. He was found guilty by a jury of six and was sentenced to 30 days in the county jail and fined $400.00. Twenty of the thirty days were suspended on the condition that the defendant attend a DUI school within two months and otherwise conduct himself in a law–abiding manner for one year. The sentence was within the limits prescribed by law.

The defendant appealed to this court contending that it was improper for the trial court in a trial anew to impose a harsher sentence than was imposed by the county justice court on the original conviction, and that the trial court erred in considering the defendant's juvenile record in determining the sentence imposed. He contended that a defendant may be reluctant to appeal and obtain a trial anew in district court if he may draw a harsher sentence than was imposed at the original trial in county justice court.

We will consider the sentencing in a trial anew first.

Section 33–12–34, NDCC, as pertinent to the issue here, provides in part:

"An appeal may be taken from a judgment of a county justice or a municipal judge sitting as a county justice, to the district court . . . by the defendant upon both questions of law and fact . . . ."

Rule 37(g), NDRCrimP, in pertinent part, provides as follows:

"An appeal to the district court or to the county court with increased jurisdiction, when perfected, transfers the action to such court for trial anew."

This court has held that in an appeal from a justice court to the district court for a trial anew, the district court is charged with the duty and has the power to try the case as if no former trial had been had. The district court makes an independent examination and determination of the issues of the law and fact that are involved. *In re Guon*, 76 N.D. 589, 38 N.W.2d 280 (1949).

In an appeal from a judgment of a police magistrate court to the district court for a trial anew, the district court in conducting a trial anew is not exercising its original jurisdiction but is exercising its appellate jurisdiction. *City of Minot v. Davis*, 84 N.W.2d 890 (N.D.1957). In an appeal from a county justice court to the district court in a criminal action, the accused may move to dismiss the complaint on the grounds that the facts stated therein do not constitute a public offense. *State v. Bauer*, 153 N.W.2d 895 (N.D.1967).

The validity of imposing a harsher sentence in a trial de novo [1] was considered and upheld by the United States Supreme Court in *Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584, decided in 1972. The Court observed that many states have a two–tier system, and in a footnote included North Dakota as one of those states. The Court in *Colten* also took into consideration its ruling in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), in which it considered the question whether or not a defendant may be given a harsher sentence on retrial after having successfully appealed a former conviction. In *Pearce* :

". . . the court concluded that such untoward sentences occurred with sufficient frequency to warrant the imposition of a prophylactic rule to ensure 'that vindictiveness against a defendant for having successfully attacked his first conviction . . . [would] play no part in the sentence he receives after a new trial . . .' and to ensure that the apprehension of such vindictiveness does not 'deter a defendant's exercise of the right to appeal or collaterally attack his first conviction. . . .' " 407 U.S. at 116, 92 S.Ct. at 196.

The *Colten* court, however, observed that the record did not indicate that there existed a hazard of the defendant being penalized for seeking a new trial, as was the case in *Pearce*, which prompted the holding in *Pearce*. The court said:

"The possibility of vindictiveness found to exist in *Pearce* is not inherent in the Kentucky two–tier system." 407 U.S. at 116, 92 S.Ct. at 1960.

---

1. The term "trial de novo" in the *Colten* case is the equivalent of a trial anew in North Dakota.

Neither is there any evidence of vindictiveness in the North Dakota two–tier system. The *Colten* court observed the court which imposed the sentence upon the defendant in the trial de novo was not the court whose work the defendant had found unsatisfactory, warranting his efforts to seek a different result on appeal, and neither was it the same court that was asked to do over what it thought it had already done correctly. Furthermore, the court to which the appeal is taken under the North Dakota two–tier system is not even asked to look at the proceedings in the other court.

The *Colten* court said:

"Nor is the *de novo* court even asked to find error in another court's work. Rather, the Kentucky court in which Colten had the unrestricted right to have a new trial was merely asked to accord the same trial, under the same rules and procedures, available to defendants whose cases are begun in that court in the first instance. . . . We see no reason, and none is offered, to assume that the *de novo* court will deal any more strictly with those who insist on a trial in the superior court after conviction in the Quarterly Court than it would with those defendants whose cases are filed originally in the superior court and who choose to put the State to its proof in a trial subject to constitutional guarantees." 407 U.S. at 117, 92 S.Ct. at 196.

These observations apply fully to the North Dakota two–tier system.

 Case law, as well as the statutes and rules of procedure of this State, set out earlier herein, clearly establish that an appeal taken to the district court from a judgment of the county justice court is a trial anew as to questions of law and fact and is not the same as a trial de novo on the record. In an appeal to the district court, the court or jury, as the case may be, will take into consideration only that evidence which is introduced in the district court. The evidence introduced at the county justice court will not be considered unless it is properly introduced as evidence in the district court. As the term implies, a new trial is new in every respect, including new sentencing.

 The legal principle involved in the instant case is not analogous to the legal problem that was involved in *Pearce, supra.* We believe it is a recognized fact that judges on the same level will impose different sentences. This has prompted efforts on the part of the legal profession to develop more uniform sentencing. The fact that judges are not uniform in sentencing has given rise to what is known as "judge shopping." Also, efforts are being made to eliminate unwarranted discrepancies. Be that as it may, we cannot on that basis conclude that constitutional rights have been violated. In the instant case we find it significant that the new trial was before a different court and a different judge.

No reason has been presented, and we are not aware of any, why a different judge at a trial anew, for vindictive reasons, would impose a harsher sentence simply because the defendant appealed and obtained a trial anew. The evidence at the new trial may bring to light facts which would indicate a greater need for a harsher sentence than the facts that were presented at the initial or original trial. In this case no record or transcript of the original trial was made or presented to the district court and consequently no comparison could be made. We are not suggesting that such be done. The state's attorney, in oral argument before this Court, indicated that additional evidence damaging to defendant was presented at the trial anew. However, our opinion does not rest upon this factor.

The defendant also contended that the imposition of the harsher sentence by the district court than the sentence given by the county justice court was in derogation of his guaranteed constitutional right to a jury trial. He argued that the imposition of a harsher sentence places a chill upon the jury trial right. The defendant, however, stated in his brief that he waived the right to a jury trial in the county justice court but demanded a jury trial in the district court. We have difficulty in following this argument because the defendant could have

had a jury trial in the county justice court upon demand. Section 33–12–19, NDCC. However, this question was put to rest in *Ludwig v. Massachusetts*, 427 U.S. 618, 96 S.Ct. 2781, 49 L.Ed.2d 732 in which the United States Supreme Court in 1976 held that the two–tier system, which is what we are concerned with here, did not violate the defendant's Fourteenth Amendment right to a trial by jury nor did it violate the double jeopardy clause of the Fifth Amendment.

After a careful review of the principles of law involved, including the constitutional challenges, we conclude that the district court did not abuse its discretion in the sentence it imposed, nor did the court violate the defendant's constitutional rights.

We now consider the propriety of using the defendant's juvenile record for sentencing purposes.

The juvenile record was not sealed, as authorized by § 27–20–54, NDCC, and consequently will not be involved as an issue in this case.

The judge did not examine the juvenile record but the state's attorney, in his presentence presentation, made reference to the defendant's juvenile record.

An examination of the pertinent statutory provisions is essential and will be helpful.

Section 27–20–33(2), NDCC, in pertinent part, provides as follows:

"2. The disposition of a child and evidence adduced in a hearing in juvenile court may not be used against him in any proceeding in any court other than a juvenile court, whether before or after reaching majority, except in dispositional proceedings after conviction of a felony for the purposes of a presentence investigation and report."

Section 27–20–51, NDCC, provides in part as follows:

"All files and records of the court in a proceeding under this chapter shall not be disclosed to the public and. are open to inspection only by:

. . . . .

4. A court and its probation and other officials or professional staff and the attorney for the defendant for use in preparing a presentence report in a criminal case in which the defendant is convicted and who prior thereto had been a party to the proceeding in juvenile court."

Section 27–20–52, NDCC, provides, as pertinent to the issue here, as follows:

"Law enforcement records and files concerning a child shall be kept separate from the records and files of arrests of adults. Unless a charge of delinquency is transferred for criminal prosecution under section 27–20–34, the interest of national security requires, or the court otherwise orders in the interest of the child, the records and files shall not be open to public inspection or their contents disclosed to the public; but inspection of the records and files is permitted by:

. . . . .

4. Law enforcement officers of other jurisdictions when necessary for the discharge of their official duties; and

5. A court in which he is convicted of a criminal offense for the purpose of a presentence report or other dispositional proceeding, or by officials of penal institutions and other penal facilities to which he is committed, or by a parole or pardon board in considering his parole or discharge or in exercising supervision over him."

We do not believe that the term "evidence" as found in § 27–20–33(2), NDCC, has the same meaning as records and files, as those terms are found in §§ 27–20–51(4) and 27–20–52(4) and (5). We do not believe a conflict exists but if one were to exist § 1–02–08 would become operative, which provides as follows:

"Except as otherwise provided in section 1–02–07, whenever, in the same statute, several clauses are irreconcilable, the clause last in order of date or position shall prevail."

In support of his position that the juvenile record may not be used or considered in sentencing the defendant relied upon *People v. Wilson*, 43 Mich.App. 459, 204 N.W.2d 269 (1972), in which the court of appeals (an intermediate court of appeals) held that it was impermissible to use the defendant's juvenile record for sentencing following his conviction in an adult court. The defendant's reliance upon this case is not well founded because the Michigan statutory provisions, except for § 27–20–33(2), NDCC, are not similar to the North Dakota provisions. In addition, *Wilson* was in effect overruled.

The *Wilson* case was buttressed on the holding in *People v. McFarlin*, 41 Mich.App. 116, 199 N.W.2d 684 (1972), which was appealed to the Michigan Supreme Court and was overruled in 208 N.W.2d 504 (1973). The Supreme Court of Michigan, in *People v. McFarlin*, 389 Mich. 557, 208 N.W.2d 504 (1973), specifically decided that the presentence report should include information concerning juvenile history, including any disposition by the juvenile court and that it is proper to consider such information as a factor in sentencing an adult offender. *McFarlin*, in effect, overruled the *Wilson* case. Consequently, any reliance upon *People v. Wilson* would be misplaced. This issue, according to the cases reaching different results, had a stormy voyage in the Michigan Court of Appeals until the Michigan Supreme Court ruled that the defendant's juvenile record may be used in sentencing a defendant who has been convicted of a crime in an adult court. The Michigan Supreme Court reached this result under its statute which prohibited the use of evidence presented at a juvenile hearing at any other trial except juvenile proceedings. North Dakota has a similar statute. It also has other statutes quoted earlier herein, which provide that the files and records may be used for other lawful purposes. The concepts of these statutes are further supported by § 39–06–29 NDCC, which provides as follows:

> "Every court or juvenile commissioner having jurisdiction over offenses committed under this title or any other law of this state or equivalent ordinance regulating the operation of motor vehicles on highways, shall forward within ten days to the commissioner a record of the conviction of any person in said court, or a report of the action of the juvenile court in the case of a juvenile, for a violation of any of said laws other than regulations governing standing or parking."

Judges do not, and should not, operate in a vacuum in sentencing. The presentence report which has become routine in most instances goes into the history and episodes of the offender which can be obtained from friends, acquaintances, family, and victims, of the accused and other persons. This presents the question: Why should this information not be presented directly with greater accuracy from the juvenile records, rather than the indirect method which may not be as reliable as the direct method from the record? We are not concerned here in presenting any evidence in the record to a jury which might be misled in its use, but we are merely concerned with informing the judge adequately to help him determine the appropriate sentence to be imposed.

We conclude that the trial court did not commit error in considering the defendant's juvenile record in its imposition of sentence.

The judgment, including the sentence of the district court, is affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.